UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILBERT NOBLE,<br><br>    Plaintiff,<br><br>    v.<br><br>DARREL G. ADAMS,<br><br>    Defendant. | Case No. 06-cv-07114-EMC<br><br>**ORDER GRANTING PETITIONER'S (1) MOTION TO LIFT STAY AND REOPEN CASE AND (2) MOTION TO SUPPLEMENT HABEAS PETITION**<br><br>Docket Nos. 64, 65 |

Petitioner Wilbert Noble, a state prisoner, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. The federal proceedings were stayed to permit Mr. Noble to exhaust two new claims in state court. *See* Docket No. 57. Mr. Noble now moves to lift the stay and supplement his petition with the new claims. *See* Docket Nos. 64, 65 ("Mot."). Warden Darrel Adams ("Respondent") objects that the new claims do not relate back to his petition and are therefore untimely. *See* Docket No. 72 ("Opp."). For the reasons stated below, the Court **GRANTS** the motion to lift the stay and motion to supplement.

## I.     PROCEDURAL HISTORY

The procedural history of this petition was succinctly stated in the order granting the motion to stay proceedings:

> Following a jury trial in the Superior Court of California, County of Santa Clara, petitioner was convicted on charges of molesting the 12-year-old grandson of petitioner's wife. The superior court imposed an aggregate prison sentence of 130 years to life, and the California Court of Appeal upheld the conviction and sentence. The conviction and sentence became final for purposes of the Anti–Terrorism and Effective Death Penalty Act (AEDPA) on July 20, 2004, when the time to petition for certiorari to the United States Supreme Court expired.
>
> Petitioner, proceeding pro se following his state court appeal, mailed

> a first petition for a writ of habeas corpus to the Santa Clara County Superior Court on June 23, 2005. The superior court denied that petition on July 25, 2005 on the grounds that several of petitioner's claims were procedurally barred because they could have been raised on direct appeal, and others failed to state a prima facie case for relief. Petitioner mailed a second petition for a writ of habeas corpus to the same superior court on September 8, 2005. The second petition re-alleged the same substantive claims as the first petition but also added a claim that petitioner's prior appellate counsel had rendered ineffective assistance by failing to raise those claims on direct appeal. The superior court denied the second petition on October 28, 2005. On December 8, 2005, petitioner mailed a petition for a writ of habeas corpus to the California Court of Appeal raising the same claims as the prior petitions. The court of appeal denied the petition on February 1, 2006. On February 15, 2006, petitioner mailed a petition for a writ of habeas corpus raising the same claims as the prior petitions to the California Supreme Court. The California Supreme Court denied the petition on October 18, 2006.
>
> Petitioner filed his federal habeas petition pursuant to 28 U.S.C. § 2254 in this court on November 16, 2006. This court dismissed the petition as untimely on August 12, 2008. In an order dated April 19, 2012, the Ninth Circuit Court of Appeals vacated this court's ruling and remanded the case for determination in the first instance whether, under California law, petitioner filed his petition in the California Court of Appeal within a reasonable time after the denial of his first petition in the superior court.
>
> After the case was remanded, petitioner submitted a brief on the timeliness issue on April 10, 2015. In response, however, respondent waived the timelines issue and proceeded to answer petitioner's claims on the merits. Rather than file a traverse to the state's answer, petitioner filed a motion to stay the federal habeas proceedings to permit him to return to state court to exhaust additional claims.

Docket No. 57 ("Stay Order"), at 1-3 (citations omitted). As discussed, the Court granted Mr. Noble's motion to stay the federal proceedings pending exhaustion in state court. Having exhausted his new claims, *see* Docket No. 65-3 (California Court of Appeal and California Supreme Court summarily denying his petitions), and now proceeding with counsel, Mr. Noble moves to lift the stay and add the new claims to his petition.

## II.　　LEGAL STANDARD

Mr. Noble does not dispute that his new claims are untimely unless they relate back to a timely claim.

Under Federal Rule of Civil Procedure 15(c), a habeas petition may be supplemented with an otherwise untimely claim if the claim relates back to a timely claim. *See Alfaro v. Johnson*,

2

862 F.3d 1176, 1183 (9th Cir. 2017). An untimely claim relates back if it "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). This means that the new claim must "arise from the same core facts as the timely filed claims"; it cannot "depend upon events separate in both time and type from the originally raised episodes." *Alfaro*, 862 F.3d at 1183 (quoting *Mayle v. Felix*, 545 U.S. 644, 657 (2005)). The Ninth Circuit has emphasized that "the 'time and type' language in *Mayle* refers not to the claims, or grounds for relief. Rather, it refers to *the facts that support those grounds*." *Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1297 (9th Cir. 2013) (emphasis in original). Accordingly, it is not enough that two claims merely "relate to the same trial, conviction, or sentence"; the claims must share a "common core of operative facts." *Mayle*, 545 U.S. at 662, 664.

### III. DISCUSSION

A. Petitioner's Claims

Mr. Noble's new claims relate to the prosecution's decision at trial to rely on evidence of misconduct from 2001 instead of the originally charged period in 2002. The felony complaint alleged two counts of aggravated sexual assault between January 2002 and April 2002. Docket No. 65-1 ("Supp. Pet.") ¶ 29. At the preliminary hearing, the prosecution presented evidence of misconduct between January 2002 and May 2002, which the information confirmed. *Id.* ¶¶ 29–30. Before jury selection, however, the prosecution moved to amend the information to expand the time range to June 2001 to May 2002. *Id.* ¶ 31. The court permitted the amendment over Mr. Noble's objection. *Id.* At trial, the prosecution relied exclusively on evidence of misconduct between July 2001 and November 2001. *Id.* ¶ 32. Because Mr. Noble's prepared defense relied on facts specific to the January to May 2002 timeframe, he was unable to adequately respond to the prosecution's arguments. *Id.* ¶¶ 34–35.

The first of Mr. Noble's new claims argues that the changed operative timeframe deprived him of his right to due process and notice of the charges under the Sixth and Fourteenth Amendments. *Id.* ¶ 33. The second claim is that Mr. Noble's appellate counsel rendered ineffective assistance for failing to raise these constitutional issues or to raise state-law protections against changing the operative timeframe in the manner described above. *Id.* ¶ 39.

3

To survive, these new claims must relate back to the ten original claims raised in Mr. Noble's habeas petition, which he labeled as follows:

- Claim 1: Petitioner's appellate counsel provide ineffective when meritorious issues existed and were not raised on direct appeal;
- Claim 2: Petitioner's due process rights were violated when the prosecution failed to correct false testimony'
- Claim 3: Petitioner exercises his right under the Due Process Clause and Fourteenth Amendment to present newly-discovered evidence;
- Claim 4: Petitioner's Sixth Amendment right to a fair trial was violated when insufficient evidence was admitted;
- Claim 5: The Trial Court committed prejudicial error when the victim's mother was not allowed to be confronted by Petitioner;
- Claim 6: The Trial Court erred either by admitting evidence regarding child sexual abuse accommodation syndrome or by failing to tailor such evidence to the issue present in this case, and by permitting a witness who lacked proper qualifications to testify as an expert;
- Claim 7: The prosecutor failed to turn over exculpatory material, to wit, an original tape-recorded pre-text call that eliminates any accusation that Noble in a sense confessed;
- Claim 8: The admission of evidence of prior sex offenses committed by Petitioner to show his propensity to commit such offenses violated his due process and equal protection rights;
- Claim 9: Trial counsel proved ineffective in failing to investigate certain potential defenses;
- Claim 10: Trial counsel committed numerous errors throughout the trial proceedings.

Docket No. 1-1 ("Pet.") at 2–3.

B. Analysis

Mr. Noble argues that his original petition is replete with references to "the contradictions

in the 'time frame' of the charges" such that his new claims relate back. Mot. at 19. A review of his original petition verifies his contention. Both the original petition and the proposed amendment are predicated on the prosecution's last minute switch in the purported time frame of offenses. Many of his ten claims in the original petition, while framed as legal theories which differ from those asserted in the amendment, focuses on (1) the prosecution's trial evidence placing the offense in 2001 instead of 2002, (2) the purported inconsistencies created by the shift in timeframe, and (3) the fact that the trial court and his counsel allowed that change in timeline without challenge. For example:

- Under Claim 2 of the original petition, Mr. Noble argued that the prosecution used false testimony from an officer who denied that the complainant specifically told her that an incident of abuse happened in April 2002. *See* Pet. at 22. Such a statement by the complainant would have been inconsistent with the July to November 2001 timeline the prosecutor presented at trial. Mr. Noble contends that the complainant's purported statement was "inconsistent with the evidence presented at pe[t]itioner's trial and clearly exonerates petitioner." *Id.* at 23.
- Under Claim 3, Mr. Noble argued that the prosecution's unexpected switch to charging him with 2001 offenses at trial undermined his due process right to present evidence in his defense, since he had only been prepared to rebut allegations of offenses that took place in 2002. Thus, Mr. Noble contends, he was denied the right to demonstrate inconsistencies in the complainant's trial testimony. In particular, the complainant purportedly said that "school started in September [2011] and the first alleged incident [of abuse] happened after school started," which placed the dates of later alleged incidents of abuse on or after October 20, 2001. *Id.* at 33–36. But Mr. Noble points out that during the trial, the complainant also "state[d] that everything happened during the football season," *id.* at 46, which "ended by October 6, 2001," *id.* at 36. In other words, the complainant's testimony that the abuse started in September "makes [what the prosecution presented at trial] an impossible time frame." *Id.* at 34.
- Under Claim 4, Mr. Noble argued that the evidence at trial was insufficient to establish

5

his guilt beyond a reasonable doubt because the prosecution's time frame was inconsistent. Mr. Noble explicitly highlighted that the complainant "put[] the time frame between January 2002" when speaking to an investigating officer prior to trial , but that "the time frame was admended [sic] back to July 2001" at trial after Mr. Noble presented evidence at the "preliminary examination that made [the January 2002 timeframe] impossible." *Id.* at 46. Mr. Noble further argued that "there is at least reasonable doubt in the time frame" based on the complainant's contradictory testimony: the complainant testified that the incidents occurred in his bedroom in Mr. Noble's apartment at a specific address, but had previously stated that "his bed was moved out of the bedroom and into the living room sometime before Christmas [2011]" and Mr. Noble had moved to a different address in March 2002. *Id.* at 49. Also under Claim 4, Mr. Noble argued that the "prosecutor coached [the complainant] to not name the months that the alleged incidents" happened when testifying at trial, even though the complainant had previously told the investigating officer "that it happened . . . in the month of April [2002]." *Id.* at 55–57.

- Under Claim 6, Mr. Noble argued that the trial court erred by permitting the prosecution to introduce evidence regarding child sexual abuse accommodation syndrome ("CSAAS") to explain the complainant's "credibility issues." *Id.* at 74. Mr. Noble asserts that the CSAAS evidence should not have been admitted because it did not address the key discrepancy in the complainant's testimony, which concerned the timeframe of events:

    > [I]n cross-examining [Officer] Randol, the defense brought out that [the complainant] initially told her, in an interview conducted on June 6, 2002, that the first molestation incident had occurred some four or five months earlier, placing it in January or February 2002, and that the last incident had taken place about one month before the interview. But in his testimony, [the complainant] claimed that the last three molestation incidents . . . occurred during football season, which had ended by the previous Halloween [in 2001].

    *Id.* at 76.

- Under Claim 9, Mr. Noble argued that his trial counsel "failed to bring up all the

6

inconsistencies of [the complainant]." *Id.* at 101. Specifically, "[t]rial counsel failed to make the jury aware of the time frame and remind them about the months in 2002 and the reason these things could not have allegedly happened in 2002." *Id.* at 102. Put differently, Mr. Noble faults his trial counsel for failing to point out that, contrary to the prosecution's theory at trial, he was originally charged with acts in 2002 and had a prepared defense based on the 2002 timeframe.

- Finally, under Claim 1, Mr. Noble contended that his appellate counsel rendered ineffective counsel by failing to raise the substantive claims asserted in his original petition on direct appeal, including all the claims listed above. *Id.* at 17.

In sum, the facts underlying Mr. Noble's original claims are: (1) the prosecution tried Mr. Noble using evidence from 2001 instead of 2002 and improperly obscured the inconsistencies created by the timeframe shift; (2) the trial court failed to focus on material inconsistencies created by the prosecution's timeframe shift; and (3) his trial and appellate counsel failed to make arguments based on the prosecution's timeframe shift. By comparison, the facts underlying Mr. Noble's two new claims are: (1) the prosecution tried Mr. Noble using evidence from 2001 instead of 2002; and (2) Mr. Noble's appellate counsel failed to make federal constitutional and state law challenges to the prosecution's use of evidence from a materially different timeframe. *See* Supp. Pet. ¶ 9.

Thus, Mr. Noble's original claims share a common core of operative facts with his new claims—the prosecution's eleventh-hour decision to shift the timeframe of charges against him, and the trial court and his counsel's inadequate responses to the shift. Those facts "were clearly alleged in the original pleading." *Nguyen*, 736 F.3d at 1297. That Mr. Noble's original petition applied different legal labels to his claims does not obscure their common factual foundation. *See id.* (emphasizing that the key to the relation-back analysis is "not . . . the claims, or grounds for relief," but rather "*the facts that support those grounds*") (emphasis in original); *Garcia v. Johnson*, No. CV 13-6864-JFW (FFM), 2016 WL 3751953, at *4 (C.D. Cal. June 16, 2016) (holding that new claim challenging the sufficiency of the evidence supporting the jury's finding that petitioner committed murder for financial gain related back to original claim challenging the

7

trial court's exclusion of evidence showing that she did not commit the charged murder for financial gain), *report and recommendation adopted*, No. CV 13-6864 JFW (FFM), 2016 WL 3751610 (C.D. Cal. July 13, 2016). Nor has Respondent pointed to any prejudice he would suffer from Mr. Noble asserting a new legal theory via amendment based on the same underlying facts. Respondent has been provided with sufficient notice of the facts underpinning the new legal claims and is in as good a position to defend against those claims as he would have been had the claims been raised in Mr. Noble's original petition.

Moreover, the Court has a "duty . . . to construe *pro se* pleadings," such as Mr. Noble's original petition, "liberally." *Zichko v. Idaho*, 247 F.3d 1015, 1020 (9th Cir. 2001) ("This rule particularly applies to complaints and motions filed by pro se prisoners.") (citations omitted); *see Doyle v. Filson*, No. 300CV00101RCJWGC, 2018 WL 2337293, at *18 (D. Nev. May 23, 2018) ("constru[ing] [petitioner's] *pro se* original petition liberally in determining what claims it asserted" for purposes of the relation-back analysis") (citing *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010).

Respondent, relying primarily on *Schneider v. McDaniel*, 674 F.3d 1144 (9th Cir. 2012), protests that Mr. Noble's new claims do not relate back to his original petition because they involve errors by different actors at different times. *See* Opp. at 4–5. In *Schneider*, the original petition alleged that the petitioner's trial counsel provided ineffective assistance by failing to investigate his co-defendant's trial strategy. *Schneider*, 674 F.3d at 1151. "[H]ad Schneider's trial counsel performed this investigation, he could have prevented the prejudice caused by [the co-defendant's] defense by filing a timely pre-trial motion to sever and to suppress [the co-defendant's] testimony." *Id.* Instead, his trial counsel did not file a motion to sever until the second day of trial, which was denied, with the result that the co-defendant gave testimony that was harmful to Schneider. *Id.* Schneider's amended petition alleged that the trial court's denial of his motion to sever the trial rendered his trial fundamentally unfair and denied him due process of law under the Fourteenth Amendment. *Id.* The court determined that there was no relation back because the two claims shared only one operative fact—that the co-defendant testified at Schneider's trial—and the original claim was based on trial counsel's failures whereas the

8

amended claim is based on the trial court's errors. *See id.*

The reasons for denying the amendment in *Schneider* are not present in this case. First, Mr. Noble's original and amended claims allege errors by the same actors. As explained above, Claims 2 and 4 in the original petition allege that the prosecution improperly switched the timeframe of the charges against Mr. Noble shortly before the start of trial and relied on false testimony to obfuscate inconsistencies in the timeframe during trial, and Claims 4 and 6 allege that the trial court erred in disregarding the timeframe inconsistencies. Mr. Noble's new claims are based on his argument that "[t]he Sixth and Fourteenth Amendments squarely prohibit *prosecutorial tactics* or *judicial decisions* which effectively 'ambush' the accused by misleading the defense on the facts and legal theories against which it must defend." Docket No. 66 at 18 (emphases added). Moreover, Claim 1 in the original petition asserted that Mr. Noble's appellate counsel rendered ineffective counsel by failing to raise arguments relating to the timeframe shift on direct appeal, and Mr. Noble now seeks to add a claim that his appellate counsel was ineffective in failing to raise federal constitutional and state law arguments relating to the same timeframe shift. *See id.* at 31. Thus, *Schneider* is inapposite.

In any event, it is not clear from *Schneider* that the mere fact that the old and new claims concern different actors would preclude a relation-back finding. As the Supreme Court underscored in *Mayle*, relation back is appropriately allowed "when the new claim is based on the same facts as the original pleading and only changes the legal theory." 545 U.S. at 664 & n.7 (quoting 3 J. Moore, et al., *Moore's Federal Practice* § 15.19[2], 15–82 (3d ed. 2004)). The Ninth Circuit in *Nguyen* reiterated *Mayle*'s instruction to focus not on the "grounds for relief," but rather on "*the facts that support those grounds*." 736 F.3d at 1297 (emphasis in original). Relying on *Mayle* and *Nguyen*, courts have allowed relation back of claims rooted in the same facts notwithstanding "that the allegedly improper actor is different in the new and old claims." *Patton v. Beardw*, No. 14-CV-569-BEN BLM, 2015 WL 1812811, at *11 (S.D. Cal. Apr. 20, 2015) (distinguishing *Schneider* as a case in which the claims "did not arise out of the same core of operative facts"); *see Wright v. LeGrand,* 2014 WL 3428487, at *1–2 (D. Nev. July 10, 2014) (stating that "[t]he point that the amended claim is based upon a legal theory of ineffective

9

assistance of counsel and the original claim was based upon a legal theory of prosecutorial misconduct is not determinative").

Second, unlike in *Schneider*, and contrary to Respondent's suggestion, the common facts underlying Mr. Noble's claims are not "incidental and inexplicit." Opp. at 7. Mr. Noble's original petition explicitly references the timeframe shift in the prosecution's evidence and that shift is central to several of his claims, including his insufficiency of the evidence and ineffective assistance of counsel claims. That same evidence of an alternative timeframe animates both claims in his amended petition.

### IV. CONCLUSION

Because the claims in Mr. Noble's amended petition relate back to those in his original petition, the Court **GRANTS** his motion to lift the stay and motion to supplement his habeas petition.

This order disposes of Docket Nos. 64 and 65.

**IT IS SO ORDERED**.

Dated: November 21, 2018

EDWARD M. CHEN
United States District Judge